**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**EXOTIC LEASING, LLC,**

**Plaintiff,**

**v.**

**Case No. 2:24-cv-3036**
**Judge Edmund A. Sargus, Jr.**
**Magistrate Judge Kimberly A. Jolson**

**7TH GEAR EXOTICS LLC, *et al.*,**

**Defendants.**

## OPINION AND ORDER

This matter is before the Court on Defendants 7th Gear Exotics LLC and Tiff A. Cook's (the "Moving Defendants") Motion to Disqualify Counsel. (ECF No. 41.) Plaintiff Exotic Leasing, LLC responded in opposition to the Motion to Disqualify (ECF No. 53), and the Moving Defendants replied in support of the Motion (ECF No. 57). For the reasons stated below, the Motion is **GRANTED**. (ECF No. 41.)

## I. BACKGROUND

Plaintiff Exotic Leasing brings this litigation against multiple defendants, including the Moving Defendants, alleging a title fraud operation involving "over 48 exotic supercars worth over $10 million." (Second Amended Complaint ("SAC"), ECF No. 64, PageID 683.) It alleges that the defendants "conspired together to defraud [Exotic Leasing] of its multimillion-dollar investment through a coordinated effort of fabricated documents, false promises, and fraudulent titles." (*Id.*) Exotic Leasing brings claims for civil Racketeer Influenced Corrupt Organizations Act ("RICO") violations, fraudulent concealment, fraudulent misrepresentation, Ohio Revised Code violations, breach of contract, and unjust enrichment. (*Id.* PageID 703–30.)

The instant Motion is not about the merits of the underlying lawsuit, but rather about whether Robert Huff Miller, one of the attorneys representing Exotic Leasing, must or should be disqualified from representing Exotic Leasing in this matter. (ECF No. 41.) While the parties paint different pictures of the scope of Mr. Miller's representations, the material facts are not in dispute.

Exotic Leasing is entirely owned by non-party Mr. Nathaniel Nale. (ECF No. 41, PageID 384; SAC ¶ 1.) Exotic Leasing provided funds for the purchase of high-end sports and luxury cars for 7th Gear. (ECF No. 41, PageID 384; SAC ¶ 1.) 7th Gear is wholly-owned by Mr. Cook. (ECF No. 41, PageID 384; SAC ¶ 5.) 7th Gear is engaged in the business of providing exotic vehicles to the public for rent. (ECF No. 41, PageID 384; SAC ¶ 1.)

According to the Moving Defendants, Mr. Nale and Mr. Cook were friends, and their friendship resulted in a business relationship. (ECF No. 41, PageID 384.) The Second Amended Complaint indicates that sometime in 2022, Mr. Nale and Mr. Cook began discussing a business arrangement. (SAC ¶ 13.) Mr. Nale would provide capital needed to acquire vehicles for 7th Gear's inventory, and this subset of vehicles in 7th Gear's inventory would be known as the "ELL Fleet" ("ELL" was short for Exotic Leasing, LLC). (*Id.*) The business arrangement was memorialized in an "Exclusive Fleet Agreement," which was amended two times thereafter. (ECF No. 23, Exs. A, F, H.)

While Exotic Leasing alleges defendants were involved in a fraudulent scheme (*see* SAC), the Moving Defendants' position is that "the reality is much more mundane," and "Mr. Nale was intimately involved in virtually all facets of 7th Gear's business, was fully aware of what the business was doing, and how it was operating" (ECF No. 41, PageID 385).

Mr. Miller is counsel of record in this litigation for Exotic Leasing, along with two other attorneys, Gregory Peterson and Istvan Gajary. The Moving Defendants assert that Mr. Miller also represented 7th Gear, upon Mr. Nale's request that Mr. Miller serve as 7th Gear's corporate counsel. (*Id.*; Declaration of Tiff A. Cook ("Cook Dec."), ECF No. 41-1, ¶ 5.) The Moving Defendants state that between mid-2022 through December 2023, Mr. Miller served as 7th Gear's primary legal counsel and represented 7th Gear in a variety of transactions. (ECF No. 41, PageID 385; Cook Dec. ¶ 6.) For example, Mr. Miller drafted 7th Gear's limited liability company operating agreement, advised 7th Gear on the creation of a separate Florida limited liability company, and caused the organization of that separate Florida entity. (ECF No. 41, PageID 385–86; Cook Dec. ¶ 7.) Mr. Miller prepared the Exclusive Fleet Agreement, and the two amendments to that agreement. (ECF No. 41, PageID 386; Cook Dec. ¶ 8.) Mr. Cook's Declaration asserts that Exotic Leasing was formed for the purpose of facilitating Mr. Nale's involvement in 7th Gear, and Mr. Miller formed Exotic Leasing, LLC and billed 7th Gear. (ECF No. 41, PageID 385; Cook Dec. ¶ 9.)

The Moving Defendants also urge that Mr. Miller advised 7th Gear in connection with potential litigation claims related to one of 7th Gear's previous investors and drafted the proposed release agreement that was ultimately entered into between 7th Gear and the previous investor. (ECF No. 41, PageID 386; Cook Dec. ¶ 10.) According to the Moving Defendants, Mr. Miller prepared vehicle leases for use between 7th Gear and its rental customers, negotiated a real estate lease for 7th Gear, drafted agreements for the purchases of vehicles to be used in 7th Gear's operations, and provided 7th Gear with other legal advice. (ECF No. 41, PageID 386; Cook Dec. ¶ 11.)

In August 2022, 7th Gear was named as a defendant in an action related to one of its vehicles filed by Allstate Insurance Company in the Eastern District of Michigan, and Mr. Miller represented 7th Gear in the litigation and assisted 7th Gear in obtaining local counsel. (ECF No. 41, PageID 386; Cook Dec. ¶ 12.) Mr. Miller also assisted 7th Gear with presenting and resolving insurance claims. (ECF No. 41, PageID 386; Cook Dec. ¶ 13.) Mr. Miller invoiced 7th Gear for his services. (ECF No. 41, PageID 386–87; Cook Dec. ¶ 14; ECF No. 41-1, PageID 406–08.) The Moving Defendants also point to the fact that 7th Gear provided Mr. Miller with a Rolls Royce to drive without charge during a vacation in Florida. (ECF No. 41, PageID 386; Cook Dec. ¶ 15.)

Exotic Leasing does not contest that Mr. Miller represented 7th Gear, but it argues that the scope of that representation was limited. (ECF No. 53, PageID 461.) Exotic Leasing highlights that 7th Gear consented to Mr. Miller's representation of Exotic Leasing in both the First and Second Amendments to the Exclusive Fleet Agreement—7th Gear "agree[s] that Robert Huff Miller represents only ELL in connection with this Amendment." (*Id.*; ECF No. 23, PageID 306, 331.) Exotic Leasing asserts that the earliest Mr. Miller began representation of 7th Gear and interacted with Mr. Cook without Mr. Nale's involvement was September 2022. (ECF No. 53, PageID 462; Declaration of Robert Huff Miller ("Miller Dec."), ECF No. 53, ¶¶ 8–11.) Mr. Miller says that he first became involved with 7th Gear when he prepared a release of certain claims by a person who had a relationship with 7th Gear, but Mr. Miller asserts this was on behalf of Mr. Nale. (ECF No. 53, PageID 462; Miller Dec. ¶ 12.)

In his Declaration, Mr. Miller explains that he worked on a proposed Amended and Restated Operating Agreement for 7th Gear "as counsel for Mr. Nale in connection with his potential investment in 7th Gear." (ECF No. 53, PageID 463; Miller Dec. ¶ 16.) Mr. Miller says

he drafted, "as counsel for Mr. Nale, an interim Investment Agreement to govern [Mr. Nale's] purchase of two cars to include in the 7th Gear fleet while the final investment was being negotiated." (ECF No. 53, PageID 463; Miller Dec. ¶¶ 18–22.)

Mr. Miller states that he "did not draft 7th Gear's LLC operating agreement" and that he "does not believe the draft amended and restated operating agreement that he circulated was ever signed." (ECF No. 53, PageID 464; Miller Dec. ¶ 23.) He states that he drafted the Exclusive Fleet Agreement on behalf of Mr. Nale and his entities and that he doesn't recall any communication with Mr. Cook or anyone at 7th Gear about the terms of that Agreement before its execution. (ECF No. 53, PageID 464–65; Miller Dec. ¶¶ 25–29.) Mr. Miller states that he does not recall drafting vehicle purchase agreements or leases, nor does he recall providing 7th Gear with advice on legal strategies. (ECF No. 53, PageID 465; Miller Dec. ¶¶ 30–32.)

Mr. Miller concedes that he was involved in the Michigan declaratory judgment action, but says his involvement was "so minimal and sporadic that he believed it did not merit billing." (ECF No. 53, PageID 465–66; Miller Dec. ¶ 35.) He believes that "the invoice attached to the Cook Declaration reflects substantially all of the material services provided by him to 7th Gear." (ECF No. 53, PageID 465; Miller Dec. ¶ 34.) Mr. Miller adds that the Rolls Royce referred to by the Moving Defendants was offered by Mr. Cook as a last-minute gift when Mr. Cook learned that Mr. Miller would be traveling to Florida with his wife. (ECF No. 53, PageID 466; Miller Dec. ¶ 38; *see also* Miller Dec. ¶¶ 36–45.) Mr. Miller says he did not serve as general counsel to 7th Gear, but that he provided 7th Gear with discrete legal services on a few matters. (ECF No. 53, PageID 466–67; Miller Dec. ¶ 46.)

By the fall of 2023, the relationship between Mr. Nale and Mr. Cook had soured after serious disagreements. (ECF No. 41, PageID 387–88; Cook Dec. ¶ 16.) Mr. Miller sent Mr.

Cook an email on December 21, 2023, with the subject line "7th Gear – Withdrawal from Representation":

> Tiff and Steve,
>
> Per my conversation with Tiff, it appears to me there are some issues that need to be worked out at this point between Tiff and Nate.
>
> Therefore, in order to get things moving in the right direction for everyone, and to do so expeditiously, I think it is best for me to represent only Nate in connection with these issues, about which I have never represented 7th Gear.
>
> As a result, effective immediately, as I discussed with Tiff, I am withdrawing from and terminating any and all representation of 7th Gear, LLC in any pending matters, so that 7th Gear, LLC is no longer a client of mine. You have contact information with Robert Murkowski, who is representing 7th Gear in the pending dispute in ED MI with Allstate. I will let him know of my withdrawal and forward to you my most recent communication with him, which confirmed that the response to the Motion for Summary Judgment is now due on January 25.
>
> I will work on a proposal from Nate to send out soon so we can move forward.

(ECF No. 41-1, PageID 409–11.)

Mr. Cook states that he never requested Mr. Miller to terminate his representation or consented to the termination of his representation of 7th Gear; the withdrawal was done unilaterally. (ECF No. 41, PageID 387–88; Cook Dec. ¶ 17.) Mr. Cook also says that he necessarily disclosed confidential and privileged information during the 18 months Mr. Miller was representing 7th Gear, and that he never waived a conflict of interest or consented to Mr. Miller's ongoing representation of Exotic Leasing and Mr. Nale. (ECF No. 41, PageID 387–88; Cook Dec. ¶¶ 18–19.) There is not a signed retainer or engagement agreement in the record. (*See* Cook Dec. ¶ 20.)

## II. STANDARD OF REVIEW

A motion to disqualify is the proper method for an opposing party to bring potential breaches of ethical conduct to the court's attention. *Hamrick v. Union Township*, 81 F. Supp. 2d

876, 878 (S.D. Ohio 2000) (Spiegel, J.). The moving party bears the burden of establishing the need for disqualification. *CareToLive v. von Eschenbach*, No. 2:07-cv-729, 2007 WL 3389927, at *1 (S.D. Ohio Nov. 7, 2007) (Frost, J.) (citing *Nilavar v. Mercy Health Sys.-W. Ohio*, 143 F. Supp. 2d 909, 912 (S.D. Ohio 2001) (Rice, C.J.)).

Disqualification of a party's attorney is a drastic remedy, and "should only be utilized when there is a 'reasonable possibility that some specifically identifiable impropriety' actually occurred, and where the public interest in requiring professional conduct by an attorney outweighs the competing interest of allowing a party to retain counsel of his choice." *SST Castings, Inc. v. Amana Appliances, Inc.*, 250 F. Supp. 2d 863, 865 (S.D. Ohio 2002) (Spiegel, J.) (quoting *Kitchen v. Aristech Chem.*, 769 F. Supp. 254, 257–59 (S.D. Ohio 1991) (Weber, J.)). Motions for disqualification should also be viewed with extreme caution as they can be misused to harass. *Id.* at 865–66. Still, "[t]he power to disqualify an attorney, or attorneys, from a case is incidental to all courts, and a district court is obliged to consider unethical conduct by an attorney in connection with any proceeding before it." *Prey v. Kruse*, No. 2:08 cv 287, 2008 WL 11350337, at *2 (S.D. Ohio July 24, 2008) (Abel, M.J.) (citing *SST Castings*, 250 F. Supp. 2d at 865).

## III. ANALYSIS

The Court begins with two preliminary matters: (1) Exotic Leasing's request for a hearing and (2) what rules apply to the Motion.

### A. No evidentiary hearing or oral argument is needed.

Exotic Leasing requests oral argument and an evidentiary hearing in its opposition papers. (ECF No. 53, PageID 460, 478.) Exotic Leasing requests oral argument and an evidentiary hearing "due to the importance of the issues," "the extreme sanction of disqualification that is sought," and "in order for the Court to have an opportunity to test the

credibility of the parties." (*Id.* PageID 478.) The Moving Defendants take no position on the requests. (ECF No. 57, PageID 494 n.1.)

**i. Evidentiary Hearing**

Local Civil Rule 7.1(b)(1) states that "[u]pon the filing of any motion that requires an evidentiary hearing under the Federal Rules of Civil Procedure or any provision of law, the movant shall obtain a date for such hearing." S.D. Ohio Civ. R. 7.1(b)(1). While Exotic Leasing mentions an evidentiary hearing once in its brief, it does not support the request with argument or case law. The Court finds there are no material factual disputes warranting an evidentiary hearing. *See Gen. Mill Supply Co. v. SCA Servs., Inc.*, 697 F.2d 704, 710 (6th Cir. 1982) ("We think a decision for disqualification is adequately founded without an evidentiary hearing if the 'factual inquiry' is conducted in a manner that will allow of appellate reviews, as it is when conducted on affidavits and documents that would be acceptable under Rule 56(e) . . . and if the district judge does not undertake to decide disputed issues of fact."); *Minor v. Greyhound Lines, Inc.*, No. 1:22-CV-00092-GNS-HBB, 2024 WL 1337360, at *5 (W.D. Ky. Mar. 28, 2024) (being satisfied after review of the affidavits and other documents in the record that there were no material factual disputes, the Court found an evidentiary hearing was not required to address the motion to disqualify).

**ii. Oral Argument**

Local Civil Rule 7.1(b)(2) provides for oral argument where it "is deemed to be essential to the fair resolution of the case because of its public importance or the complexity of the factual or legal issues presented." S.D. Ohio Civ. R. 7.1(b)(2). The Court has reviewed the parties' briefs, declarations, and accompanying exhibits, which address the issues presently before the Court extensively, and finds that oral argument is not necessary. *See Whitescarver v. Sabin*

*Robbins Paper Co.*, No. C-1-03-911, 2006 WL 2128929, at *2 (S.D. Ohio July 27, 2006) (Dlott, J.) ("Local Rule 7.1(b)(2) leaves the Court with discretion whether to grant a request for oral argument."). The Court will decide the Moving Defendants' Motion to Disqualify on the papers.

**B. What rules apply?**

The Moving Defendants cite caselaw indicating that the Rules of Professional Conduct guide courts when deciding disqualification motions and that in this Court, those Rules are the Ohio Rules of Professional Conduct. (ECF No. 41, PageID 388 (citing *Cabatech, LLC v. Nextlight, LLC*, No. 1:22-cv-59, 2023 WL 2643795, at *2 (S.D. Ohio Mar. 27, 2023) (McFarland, J.); *Nat'l Union Fire Ins. Co. v. Alticor, Inc.*, 466 F.3d 456, 457 (6th Cir. 2006), *vacated in part on other grounds*, 472 F.3d 436 (6th Cir. 2007); *Miller v. Food Concepts Int'l, LP*, No. 2:13-cv-00124, 2015 WL 6082602, at *7 (S.D. Ohio Oct. 16, 2015) (Marbley, J.)).) Exotic Leasing does not contest this point. The Court agrees that the Ohio Rules of Professional Conduct guide the analysis. *See* S.D. Ohio Civ. R. 83.3(h) ("The conduct of attorneys admitted to practice before this Court . . . is governed by the Model Federal Rules of Disciplinary Enforcement."); Model Federal Rules of Disciplinary Enforcement, Rule IV(B), Standards for Professional Conduct ("The Rules of Professional Conduct adopted by this court are the Rules of Professional Conduct adopted by the highest court of the state in which this Court sits . . . ."); *Cabatech*, 2023 WL 2643795, at *2 (applying the Ohio Rules of Professional Conduct).

**C. The Moving Defendants have not waived.**

Exotic Leasing asserts the Moving Defendants waived their right to object to any conflict of interest by waiting ten months to move to disqualify Mr. Miller. (ECF No. 53, PageID 467–68.) Exotic Leasing calculates the ten months as the period between when Mr. Miller disclosed

the conflict by email on December 21, 2023 (ECF No. 41-1, PageID 409–11), through the Moving Defendants' filing of the instant Motion on October 30, 2024 (ECF No. 41).

"Courts have disallowed disqualification on the basis of waiver or estoppel where the moving party has failed to move for disqualification in a timely manner." *In re Valley-Vulcan Mold Co.*, 5 F. App'x 396, 401 (6th Cir. 2001). A former client who is entitled to object to an attorney representing an opposing party on conflict grounds but who knowingly refrains from asserting it promptly is deemed to have waived that right. *Id.* (quoting *Tr. Corp. of Mont. v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983)); *In re Nat'l Century Fin. Enters., Inc. Fin. Inv. Litig.*, No. 2:03-md-1565, 2010 WL 1257598, at *9–10 (S.D. Ohio Mar. 29, 2010) (Graham, J.) (finding delay in raising conflict issue constituted a wavier where it was raised in gamesmanship).

The Court finds no waiver by the Moving Defendants, considering the relevant factors. Courts consider "(1) the length of the delay in bringing the motion to disqualify; (2) when the former client learned of the conflict; (3) whether the former client was represented by counsel during the delay; (4) why the delay occurred; and (5) whether the delay would result in prejudice to the moving party." *In re Nat'l Century Fin. Enters.*, 2010 WL 1257598, at *9. In both *Valley-Vulcan Mold* and *Piper Aircraft Corp.*, disqualification motions were properly denied on waiver grounds where the motions were filed just before the scheduled trial date. *See Valley-Vulcan Mold*, 5 F. App'x at 401; *Piper Aircraft Corp.*, 701 F.2d at 86–87. The Moving Defendants note this case was filed on May 29, 2024 (ECF No. 1), and the Motion to Disqualify was filed on October 30, 2024 (ECF No. 41). (ECF No. 57, PageID 495.) The Notice of Waiver of Service of Summons for the Moving Defendants was filed July 18, 2024, and the answer was due on September 16, 2024. (ECF No. 20.) The length of delay here is not great in comparison to the

cases where courts have found waiver. The Moving Defendants appear to have been represented by counsel since April 2024 (ECF No. 23, PageID 332), but again, considering when the Notice of Waiver was filed, the delay was not significant. Nor is there any evidence indicating gamesmanship on the Moving Defendants' part.

Exotic Leasing argues that delay would prejudice it severely because Mr. Miller has represented Exotic Leasing continually since the conflict was disclosed and through the pendency of the case. (ECF No. 53, PageID 468–69.) Exotic Leasing supports this argument by again arguing the Moving Defendants waited too long to present the conflict. (*Id.*) But the Court already found that argument unpersuasive above. As the Moving Defendants highlight (ECF No. 57, PageID 498), Exotic Leasing has been represented by Messrs. Peterson and Gajary since the start of this litigation too, and so disqualification of Mr. Miller would create no great prejudice.

Exotic Leasing's waiver argument is unpersuasive.

**D. The Ohio Rules of Professional Conduct counsel that Mr. Miller should be disqualified.**

The Moving Defendants argue that Mr. Miller's representation of Exotic Leasing in a suit seeking monetary damages against 7th Gear is a violation of Rule 1.7(a)(1). (ECF No. 41, PageID 389.) Rule 1.7 provides:

> (a) A lawyer's acceptance or continuation of representation of a client creates a conflict of interest if either of the following applies:
>
> > (1) the representation of that client will be directly adverse to another current client;
> >
> > (2) there is a substantial risk that the lawyer's ability to consider, recommend, or carry out an appropriate course of action for that client will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by the lawyer's own personal interests.
>
> (b) A lawyer shall not accept or continue the representation of a client if a conflict of interest would be created pursuant to division (a) of this rule, unless all of the following apply:

> (1) the lawyer will be able to provide competent and diligent representation to each affected client;
>
> (2) each affected client gives informed consent, confirmed in writing;
>
> (3) the representation is not precluded by division (c) of this rule.
>
> (c) Even if each affected client consents, the lawyer shall not accept or continue the representation if either of the following applies:
>
> (1) the representation is prohibited by law;
>
> (2) the representation would involve the assertion of a claim by one client against another client represented by the lawyer in the same proceeding.

The Moving Defendants cite caselaw and comments to this Rule supporting the proposition that in civil cases, a lawyer will ordinarily be forced to withdraw from representing all clients if the common representation fails. (ECF No. 41, PageID 389 (citing *Prey*, 2008 WL 11350337, at *2; Ohio Prof. Cond. R. 1.7, cmt. 25; Model Rules of Prof'l Conduct R. 1.7, cmt. 29; *Hamrick*, 81 F. Supp. 2d at 878).) Anticipating Exotic Leasing will argue 7th Gear is not a current client because of Mr. Miller's withdrawal from representation in December 2023, the Moving Defendants argue that the "hot potato" rule applies. (ECF No. 41, PageID 390.) That rule states that an attorney may not drop one client to resolve a direct conflict of interest, thus turning a present client into a former client. (*Id.* (citing *Garland v. Ford Motor Co.*, No. 2:12-00121, 2015 WL 1401030, at *6 (M.D. Tenn. Mar. 26, 2015), as well as other caselaw).) The Moving Defendants argue that the relevant time to analyze is December 21, 2023, when Mr. Miller learned Exotic Leasing and 7th Gear had "issues that needed to be worked out." (*Id.* PageID 391–92.)

Exotic Leasing responds that the hot potato rule does not invalidate Mr. Miller's termination of his representation of 7th Gear. (ECF No. 53, PageID 469.) Exotic Leasing argues that rule does not apply and Mr. Miller was permitted to terminate his representation of 7th Gear because the conflict did not exist at the onset of representation and Mr. Miller did not create the

conflict (referred to as the thrust-upon exception). (*Id.* PageID 469–70 (citing Ohio Board of Professional Conduct Advisory Opinion 2019-01 (Feb. 8, 2019)).) Exotic Leasing further argues that Mr. Miller's action complied with Comment 8 to Rule 1.7. (*Id.*)

To begin the analysis, the Court is guided by Comment 1 to Rule 1.7, which reminds that "[t]he principles of loyalty and independent judgment are fundamental to the attorney-client relationship and underlie the conflict-of-interest provisions of these rules." Next, Comment 2 to the same Rule explains that

> In order to analyze and resolve a conflict of interest problem under this rule, a lawyer must: (1) clearly identify the client or clients; (2) determine whether a conflict of interest exists; (3) decide whether the representation is barred by either criteria of division (c); (4) evaluate, under division (b)(1), whether the lawyer can competently and diligently represent all clients affected by the conflict of interest; and (5) if representation is otherwise permissible, consult with the clients affected by the conflict and obtain the informed consent of each of them, confirmed in writing.

No party disputes that Exotic Leasing and 7th Gear were both clients of Mr. Miller; they dispute the scope of that representation. Mr. Miller determined a conflict existed on December 21, 2023, when he sent his email withdrawing from representation of 7th Gear because of "some issues that need to be worked out at this point between Tiff and Nate." (ECF No. 41-1, PageID 409–11); *see Garland*, 2015 WL 1401030, at *6 (quoting *El Camino Res., Ltd. v. Huntington Nat'l Bank*, 623 F. Supp. 2d 863, 868 (W.D. Mich. 2007)) (status of the attorney-client relationship is assessed at the time the conflict arises, not when the court receives a motion to disqualify). Mr. Miller decided he could not continue representation, presumably under Rule 1.7, and withdrew or attempted to withdraw from representation of 7th Gear. (*Id.*) So the issues become whether that withdrawal was proper, whether Mr. Miller was required to withdraw from representation of both parties, and even if he was not required to do so at that time, whether it is proper for him to represent Exotic Leasing in litigation against 7th Gear.

The parties spend many pages arguing the hot potato rule, exceptions thereto, and caselaw that favors their respective positions. But even assuming Exotic Leasing's position with respect to those arguments is correct—that the conflict was thrust upon Mr. Miller (*see* ECF No. 53, PageID 470)—the Court doesn't get far in the analysis without Exotic Leasing running into problems. Comment 8 to Rule 1.7, which Exotic Leasing argues allows Mr. Miller's continued representation of it, states:

> When a conflict arises from a lawyer's representation of more than one client, whether the lawyer must withdraw from representing all affected clients or may continue to represent one or more of them depends upon whether: (1) the lawyer can both satisfy the duties owed to the former client and adequately represent the remaining client or clients, given the lawyer's duties to the former client (see Rule 1.9); and (2) any necessary client consent is obtained. [analogous to a portion of Model Rule Comment 4]

So the Court must examine Ohio Rule of Professional Conduct 1.9, Duties to Former Clients, and if 7th Gear gave consent.

The parties seems to agree that subsection (a) of Rule 1.9 is the relevant part (emphasis in original):

> (a) Unless the former client gives *informed consent, confirmed in writing*, a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a *substantially related matter* in which that person's interests are materially adverse to the interests of the former client.

The Sixth Circuit has articulated additional guidance for determining whether disqualification based on a conflict of interest is warranted: "(1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was/is substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification." *See Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 889 (6th Cir. 1990); *but see Bowers v. Ophthalmology Grp.*, 733 F.3d 647, 651 (6th Cir. 2013) (noting the Sixth Circuit's "decisions

have not made clear how the *Dana* analysis operates in conjunction with this court's rule that attorneys are 'subject to the rules of professional conduct or other equivalent rules of the state where the attorney's principal office is located'").

The first *Dana* factor is not in dispute. Moving to the second and third *Dana* factors, Exotic Leasing argues that "due to the limited nature of the representation of 7th Gear, which began after the Exclusive Fleet Agreement was entered into and terminated before the First and Second Amendments, Mr. Miller did not represent 7th Gear in the same transaction or legal dispute at issue here, and did not obtain any relevant confidential information from 7th Gear." (ECF No. 53, PageID 475.) Exotic Leasing also makes the argument that because the Moving Defendants argue Mr. Nale knew everything about 7th Gear's business—although it disputes that point—Mr. Miller could not have received confidential information. (*Id.* PageID 476.)

The record suggests otherwise. While the parties disagree about the scope of Mr. Miller's representation of 7th Gear, it is clear 7th Gear was Mr. Miller's client from at least September 2022—and probably before given invoice entries, (ECF No. 41-4, PageID 406)—until late December 2023. Mr. Miller was intimately familiar with the Exclusive Fleet Agreement and drafted the two amendments to that document. Mr. Miller assisted 7th Gear with litigation. He invoiced 7th Gear for legal services and terminated (or attempted to terminate) the representation relationship when serious conflicts surfaced between Mr. Nale and Mr. Cook. Given that this lawsuit is in large part about the relationship between Exotic Leasing and 7th Gear, the ELL Fleet, and the Exclusive Fleet Agreement, Mr. Miller's representation of 7th Gear and this lawsuit are substantially related. Substantial risk exists that confidential information that would have normally been obtained in the prior representation would materially advance Exotic Leasing's position in this matter. *See Bowers*, 733 F.3d at 651–54. It also seems unlikely that Mr.

Miller obtained no confidential information during his work with 7th Gear, and Mr. Cook states that he did indeed disclose confidential information to Mr. Miller. (Cook Dec. ¶¶ 18–19.)

As for the "informed consent, confirmed in writing," Exotic Leasing supports its position that 7th Gear gave consent based on language in the two amendments to the Exclusive Fleet Agreement that Exotic Leasing, Mr. Cook, and 7th Gear "agree[d] that Robert Huff Miller represents only ELL in connection with this Amendment." (ECF No. 23, Ex. F, First Amendment, § 5, PageID 306; ECF No. 23, Ex. H, Second Amendment, § 3, PageID 331.) Exotic Leasing says Mr. Miller informed the Moving Defendants of the conflict and documented the conflict in email. (ECF No. 53, PageID 476.)

This is not enough. As Exotic Leasing states, Ohio Rule of Professional Conduct 1.0(f) defines informed consent as "the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." One email withdrawing or attempting to withdraw from representation and contract amendment language does not fit this definition. Mr. Miller was telling the Moving Defendants—not explaining or seeking agreement from them—that he was withdrawing his representation of 7th Gear in his December 21, 2023 email. Mr. Cook states in his declaration that he never asked Mr. Miller to terminate his representation of 7th Gear or consented to that termination. (Cook Dec. ¶ 17.) Mr. Cook also asserts that he never waived a conflict of interest or consented to Mr. Miller's ongoing representation of Exotic Leasing and Mr. Nale. (*Id.* ¶ 19.) In addition, consent to Mr. Miller representing Exotic Leasing only in the amendments was limited to the drafting and negotiating of those documents.

Considering the Ohio Rules of Professional Conduct, the Rules' intent to ensure loyalty and independent judgment of counsel, and precedent, Mr. Miller is disqualified as counsel for Exotic Leasing in this matter.

Finally, the parties argue about whether Mr. Miller should be disqualified as a necessary witness under Ohio Rule of Professional Conduct 3.7. (*See* ECF No. 41, PageID 395–97; ECF No. 53, PageID 477–78.) The Court disqualifies Mr. Miller before reaching those arguments, and so need not address them.

## IV. CONCLUSION

For the above reasons, the Court **GRANTS** (ECF No. 41) Defendants 7th Gear Exotics LLC and Tiff A. Cook's Motion to Disqualify Counsel. This case remains open.

**IT IS SO ORDERED.**

**9/29/2026**
**DATE**

**s/Edmund A. Sargus, Jr.**
**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**